**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| WILLIAM WOOD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | 3:13-cv-00369-MJR-DGW |
| | ) | |
| ARMSTRONG INTERNATIONAL, INC.; | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT UNITED TECHNOLOGIES CORPORATION'S NOTICE OF REMOVAL
OF ACTION UNDER 28 U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR
IMMUNITY – ACTING UNDER DIRECTION OF FEDERAL OFFICERS)**

Defendant United Technologies Corporation ("UTC") hereby gives notice of removal of the above-entitled action from the Third Judicial Circuit, Madison County, Illinois, to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446. In support of its removal, UTC respectfully states the following:

**Preliminary Matters**

1.      On or about July 24, 2012, plaintiff William Wood filed this personal injury complaint, bearing Case No. 12-L-1110, against UTC and other defendants in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois. A true and correct copy of the Summons and Complaint are attached hereto as **Exhibit A**.

2.      Plaintiff alleges that he developed an asbestos-related disease as a result of exposure to asbestos fibers released from defendants' products while serving in the United States Air Force from 1965 to 1969 as an Aircraft Electrician.

3.      This case is removable based on federal officer jurisdiction under 28 U.S.C., §1442(a)(1). Plaintiff's claims against UTC are based on his alleged exposure to asbestos from military equipment supplied to the United States Air Force. Any and all equipment produced and supplied by UTC for the U.S. Air Force was specifically designed and manufactured in accordance with specifications provided by the U.S. Air Force and was designed and built under

the direction and control of the military and its officers.  Accordingly, this case is removable on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

4.      This notice of removal is timely.  The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when defendant receives a copy of the initial pleading setting forth the claim for relief from which it may first be ascertained that the case is removable.  28 U.S.C. § 1446(b).  UTC was served with the Summons and Complaint through its agent for service of process on January 25, 2013.  The Complaint made no specific allegations of asbestos exposure from any specific products.  UTC filed its Answer on February 27, 2013.  A true and correct copy of UTC's Answer is attached hereto as **Exhibit B**.  On March 20, 2013, UTC was served with Plaintiffs' Responses to Standard Asbestos Interrogatories Directed to Plaintiffs.  A true and correct copy of Plaintiffs' Responses to Standard Asbestos Interrogatories Directed to Plaintiffs is attached hereto as **Exhibit C**.  The receipt of Plaintiffs' Responses to Standard Asbestos Interrogatories Directed to Plaintiffs put UTC on notice for the first time that plaintiff's claims in this action involve alleged exposure to asbestos from military equipment built for the U.S. Air Force pursuant to specifications provided by the U.S. Air Force and under the direction and control of the U.S. Air Force and its officers.  This Notice of Removal, which is being filed within 30 days of UTC's receipt of Plaintiffs' Responses to Standard Asbestos Interrogatories Directed to Plaintiffs, is timely under 28 U.S.C. § 1446(b).

### Nature of the Case

5.      The case is based on allegations that plaintiff William Wood developed an asbestos-related disease caused by exposure to asbestos and asbestos-containing products.

6.      Plaintiff asserts personal injury causes of action against UTC.

### Jurisdiction, Venue and Intradistrict Assignment

7.      Jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) as set forth below under Grounds for Removal.

8.      Venue is proper in the United States District Court for the Southern District of Illinois as the state court action, which is subject to this removal petition, was filed with the

Circuit Court of the Third Judicial Circuit, Madison County, Illinois, where it was alleged that all parties are subject to personal jurisdiction.

9.     Furthermore, §1442(a) authorizes such a removal without the consent of any other defendant. *See Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1314-1315 (9th Cir. 1981) ("federal officer…can remove without other defendants joining the petition, and the entire case is removed to the federal court.").

## Grounds for Removal

10.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, and is removable to this Court by UTC pursuant to the provisions of 28 U.S.C. § 1442(a)(1) in that it is a civil action in which plaintiff's alleged right to relief necessarily depends on the resolution of a substantial question of federal law.  "Federal officers, and their agents, may remove cases based on acts performed under the color of their federal office if they assert a colorable defense." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006); *see also Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996).  "(T)he Supreme Court has mandated a generous interpretation of the federal officer removal statute . . ." and there is a "clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Durham,* 445 F.3d at 1252; *see also Jefferson County, Alabama v. Acker,* 527 U.S. 423, 431 (1999) (noting that the Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal officer removal] statute.").

11.     At all relevant times, UTC was a "person(s)" within the meaning of 28 U.S.C. § 1442(a)(1). *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal. 1992) (finding that a corporate defendant was a "person").

12.     UTC was acting under the direction of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1) in designing, manufacturing, and supplying aircraft engines for and to the U.S. Air Force.  This equipment was manufactured pursuant to precise

specifications provided by the U.S. Air Force and UTC has a colorable federal defense to plaintiff's state law tort claims.

13.     Should plaintiff file a motion to remand this case, UTC respectfully requests an opportunity to respond more fully in writing, including the submission of additional affidavits and authorities, but offers the following at this time:

14.     Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (a) demonstrate that it acted under the direction of a federal officer, (b) raise a colorable federal defense to plaintiff's claims, and (c) demonstrate a causal nexus between plaintiff's claims and the acts it performed under color of federal office. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D.Cal. 1992); *Machnik v. Buffalo Pumps, Inc.*, 506 F.Supp.2d 99, 102 (D.Conn. 2007).  Here, UTC has satisfied all three requirements and is entitled to the federal officer removal provision.

15.     "While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated.  Nor is the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense."  *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770, 782 (E.D.Pa. 2010).  "It is the sufficiency of the facts stated — not the weight of the proof presented — that matters.  For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense.  It is not the Court's role to impose judicially created tolls on those who seek to travel on it.  Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.  *Id*. at 782-83.  Here, UTC identifies facts that establish the government contractor defense and entitled it to the federal officer removal provision.

a)     UTC designs and manufactures aircraft engines through its unincorporated division of Pratt & Whitney.  Declaration of Allan J. Shiffler, **Exhibit D** hereto, ¶¶ 2-3.  Aircraft

engines, and their component parts, supplied to the U.S. Air Force were specially designed and built for the U.S. Air Force pursuant to very precise military specifications, and design and performance requirements.  *Id.* at ¶¶ 7-11.  Aircraft engines manufactured by UTC for use in U.S. Air Force aircraft strictly complied with precise standards and specifications.  *Id.* at ¶¶ 7-11.  Before a manufacturer such as UTC received authorization to manufacture machinery for the U.S. Air Force, all of the drawings, plans, technical manuals and other design documentation first had to be inspected and approved by the U.S. Air Force.  The Air Force frequently required changes in design, materials and documentation before approving the design and authorizing the manufacture of the machinery.  *Id.* at ¶¶ 7-11.  U.S. Air Force inspectors were stationed on site at manufacturing facilities to inspect and test this equipment during each phase of the manufacturing process.  At any point, if any material, feature or component of the equipment failed to comply with the applicable military specifications, then it would have been rejected by the Air Force.  *Id.* at ¶¶ 7-11.  UTC complied with all of the precise military specifications that it was required to meet.  The level of Air Force specification and approval for component parts included packing and gasket materials.  If any gasket or packing material, whether asbestos-containing or not, was used in conjunction with an aircraft engine supplied for use by the Air Force, then use of that material was specifically mandated or approved by the Air Force.  *Id.* at ¶¶7-11.

b)      The U.S. Air Force's specifications governing equipment supplied for its use also covered the nature of any communication affixed to or accompanying the equipment.  The Air Force had detailed specifications that governed the form and content of written materials to be delivered with the equipment supplied to the Air Force.  A vendor such as UTC would not have been permitted (either under the specifications or, as a matter of Air Force practice) to include any type of warning or cautionary statement not required or approved by the Air Force without prior discussion, approval, and acceptance by the Air Force.  *Id.* at ¶ 11.

c)      UTC raises a colorable federal defense to this action under government contractor immunity in that the U.S. Air Force, including military specialists, controlled the design and

manufacture of any aircraft engines produced by UTC for the U.S. Air Force.  *Id.* at ¶¶ 7-11.
The U.S. Air Force provided, scrutinized and approved extensive and detailed performance and
construction specifications for the UTC aircraft engines intended for Air Force use.  *Id.*  The U.S.
government had state of the art knowledge of the hazards of asbestos-containing components of
its equipment at all times relevant to this action.  Declaration of William P. Ringo, **Exhibit E**
hereto, ¶ 9.

        d)      A causal nexus exists between plaintiff's claims in this action and the acts taken
by UTC under the direction of federal officers.  Plaintiff's claims against UTC arise from his
alleged exposure to asbestos from Pratt & Whitney aircraft engines while serving in the U.S. Air
Force.  Military aircraft engines supplied by UTC to the U.S. Air Force were designed and
manufactured under strict government control and pursuant to precise specifications that were
provided by, scrutinized by, and/or revised by, and in all cases approved by the U.S. Air Force.
UTC's actions are inseparable from the government specifications, regulations, and oversight,
and a clear causal nexus exists between plaintiff's claims and UTC's acts performed under color
of federal office.  *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510 (1988);
*Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996); *Marley v. Elliott
Turbomachinery Co., Inc.*, 545 F. Supp. 2d 1266, 1271 (S.D. Fla. 2008); *Arness v. Boeing North
American, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998); *Sundstrom v. McDonnell Douglas Corp.*,
816 F.Supp. 587 (N.D. Cal. 1993); *Crocker v. Borden*, 852 F.Supp. 1322 (E.D. La. 1994); *Fung
v. Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992); *Pack v. AC and S, Inc.*, 838 F. Supp. 1099 (D.
Md. 1993).

        16.     Plaintiff's claims against UTC are affirmatively barred by government contractor
immunity as set forth by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, 487
U.S. 500, 108 S.Ct. 2510 (1988), and by the Ninth Circuit Court of Appeals in *McKay v.
Rockwell International Corp.*, 704 F.2d 444 (9th Cir. 1983).  Pursuant to this federal defense,
military equipment manufacturers, such as UTC, cannot be held liable under state law for any
injuries caused by the equipment it built for the U.S. military when: (a) the United States

approved reasonably precise specifications; (b) the equipment conformed to these specifications; and (c) the equipment supplier warns the military about any hazards involved in the use of the equipment that are known to the equipment supplier but not known to the military.  *See Boyle*, 487 U.S. 500 at 512; *McKay*, 704 F.2d. 444 at 451.  "The contractor's duty to warn under the third prong of *Boyle* extends only to those dangers in the use of the equipment which are unknown to the government."  *Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587, 590 (N.D.Cal. 1993).

17.     Analyzing the *Boyle/McKay* factors with the facts above shows (a) that UTC designed and manufactured the military equipment in question under strict government supervision and control and that the U.S. Air Force approved reasonably precise specifications for the manufacture of aircraft engines, (b) the aircraft engines conformed to those specifications, and (c) the U.S. Air Force had state of the art knowledge and was aware of potential health hazards of working with or around asbestos-containing materials dating back to the 1930s.  Thus, UTC would not have had knowledge of any hazards associated with the use of the equipment which was not already known to the United States.  UTC has more than a colorable federal defense to this state action under government contractor immunity.  *See Blackman v. Asbestos Defendants (BHC)*, 1997 WL 703773, *3 (N.D.Cal. 1997) (finding that defendant contractor had no duty to warn the Air Force of dangers of asbestos use in military equipment where the contractor was not an asbestos manufacturer and "had no greater opportunity to know of the dangers of asbestos in the 1970s than did the USAF")*; see also Boyle*, 487 U.S. at 512; *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996); *Marley v. Elliot Turbomachinery Co., Inc.*, 545 F. Supp. 2d 1266, 1271 (S.D. Fla. 2008); *Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998); *Crocker v. Borden*, 852 F.Supp. 1322 (E.D. La. 1994); *Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587 (N.D. Cal. 1993); *Pack v. AC and S, Inc.*, 838 F. Supp. 1099 (D. Md. 1993); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992).

18.     The existence of a single removable claim allows removal of the entire action.  28 U.S.C. § 1441(c).  *National Audubon Society v. Dept. of Water*, 496 F.Supp. 499, 509 (E.D. Cal. 1980).

19.     Notice of this removal has been, or will be, filed with the state court and provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).

20.     This removal is based on this Notice of Removal to the United States District Court, the Certificate of Service of Notice to Adverse Party of Removal filed in the state court action, the Notice to Adverse Party of Removal to Federal Court filed in the state court action, the complete file in the state court case, and any other matters which the court deems applicable.

WHEREFORE, defendant UTC prays that this action be removed from the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, to the United States District Court for the Southern District of Illinois.

KUROWSKI SHULTZ LLC

By:

_/s/ William D. Shultz, Jr._
William D. Shultz, Jr., #06207607
228 West Pointe Drive
Swansea, IL 62226
618/277-5500
618/277-6334 (Fax)
ATTORNEYS FOR DEFENDANT
UNITED TECHNOLOGIES
CORPORATION

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing Notice of Removal to Federal Court was electronically filed using the CM/EFF system which will send notification of such filing to the following:

Mr. Steven M. Aroesty
Napoli Bern Ripka Shkolnik, LLP
241 North Main Street
Edwardsville, IL 62025
Attorneys for Plaintiffs

_/s/ William D. Shultz, Jr._
William D. Shultz, Jr., #06207607
ATTORNEYS FOR DEFENDANT
UNITED TECHNOLOGIES
CORPORATION